WRIGHT, Presiding Judge.
This is a divorce case. We affirm. The issues presented are whether the trial court abused its discretion in the division of the property and in fixing the award of alimony.
The husband sued for divorce on grounds of incompatibility and irretrievable breakdown of the marriage. The wife counterclaimed on the same grounds and also on the ground of adultery. The trial judge entered a decree of divorce without stating any grounds therefor. The wife appeals the court’s distribution of property and the fixing of alimony; the husband cross-appeals the same issues.
The marriage of the parties lasted almost thirty years. There are three children, all of whom are college-educated, married and on their own, with the exception of the youngest, age twenty-five, who still receives partial support from his father.
The husband is fifty-two years old. The wife is apparently the same approximate age. She appears to be in good health. *26 The husband is not. He has a long history of health problems, the most serious of which resulted in a quadruple by-pass operation. Several years earlier he came close to dying from a high blood pressure attack. He also has been prone to gastrointestinal problems, hypertension, obesity and hyper-lipemia. He is currently diagnosed as having incurable coronary artery disease. He is also subject to intermittent angina with its attendant pain. The medicine he takes for these ailments causes several side-effects, including impotence and fatigue. He has been advised to stop working, and at the very least attempt to reduce the stress in his life.
The record discloses that one of the causes of stress in his life is the behavior of his wife. She admitted that she has caused several scenes at his office and has accused him for more than a decade of carrying on an affair with Diane Morris.
Diane Morris presently owns some thirty percent of the stock in the multistate photography business of which the husband owns the remaining seventy percent. That business is twenty-seven years old; Diane Morris was hired approximately nineteen years ago by the husband’s original partner. She is currently the business manager, and it was undisputed that she individually oversees the more than sixty employees and in fact runs the business — except for major financial decisions which are made by the husband.
The wife admitted that she has been trying to get Diane Morris fired almost from day one of her employment. One of the causes of her jealousy — and from the record it would appear to be unfounded jealousy — is the frequency with which her husband and Morris meet for lunch. Testimony revealed that Morris, the husband and his original partner met almost every day for lunch to discuss the business without the interruptions that were apparently constant and common at the office. There was no evidence produced at trial that the relationship between the husband and Morris was anything other than a business one; in fact, there was substantial evidence to the contrary. Nevertheless, the wife had on numerous occasions threatened violence both toward Morris and her husband, and the record showed that she had twice visited the home of Morris where it would appear that she had to be forcibly removed by Morris’s husband.
The husband did admit to an affair, but not with Morris, for six weeks in 1982. That was a period of time when the parties were living apart. After that period he moved back in with his wife, until they again separated about a year later for six months. They subsequently took up residence again and have lived together until the present proceedings. Other than the affair to which the husband admitted and the wife apparently condoned, there was no concrete evidence produced at trial establishing any other infidelity by the husband.
At one time the husband’s business was quite successful and he was drawing a salary of from $75,000 to $100,000 a year. The business began having trouble about 1980 and it was uncontroverted that the husband now brings home, after taxes, approximately $290 per week from his photography business. When the business began failing, the husband was forced to sell certain assets to meet his financial obligations. He also began borrowing money from banks and from his business so that he currently has outstanding debts of some $227,000.
The trial court made the following determination in the decree of divorce: the wife is to receive $250 per month in alimony, the family home, half the household goods, various business and residential properties, a 1981 Toyota, insurance policies and other assets, which brings her total property division in the neighborhood of $346,000; the husband is to receive half the household goods, some business property, a boat, a 1984 Cadillac, seventy percent of his photography business, his pension plan, and other assets which would appear to bring *27 his total property division in the neighborhood of $350,000.
The husband is presently working despite his doctor’s advice, and it would appear that he will continue, although at fewer hours than he once did. It would also appear that his business is beginning to turn around; the future of the company certainly looks brighter than it did six years ago. Although the wife claimed that she had never worked during the marriage, the husband’s testimony that she had on occasion helped him with sales and had done sales in other businesses and was quite good at it was not disputed. The wife worked for the telephone company before she was married.
Both parties appeal contesting the property distribution and alimony. It is well settled that the trial court is afforded wide discretion in awarding marital assets in divorce cases, and such discretion is presumed correctly applied on appeal and is to be set aside or revised only if determined to be so arbitrary, disparate and contrary to equity as to be clearly wrong and unjust. Thompson v. Thompson, 377 So.2d 141 (Ala.Civ.App.1979). We do not find such abuse of discretion in this case.
The husband contends that the court considered his $450,000 pension fund in the distribution of the marital property, and that such consideration is a legal error in Alabama. See Kabaci v. Kabaci, 373 So.2d 1144 (Ala.Civ.App.1979). We have held that in the absence of specific language to the contrary, the amount awarded as periodic alimony can be considered to have been based on, among other things, a retirement fund. Broadus v. Broadus, 470 So.2d 1239 (Ala.Civ.App.1985). Such is the case here. There was no specific designation that the pension fund was considered in the distribution of the marital property. We cannot say the court erred in its determination of alimony and property distribution, given the facts as disclosed by the record.
The judgment is affirmed.
The respective requests of appellant and appellee for attorney’s fees on appeal are denied.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.